Carolyn H. Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Michelle S. Lim (SBN 315691)
William M. Hogg (to be admitted *pro hac vice*)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
mlim@schneiderwallace.com
whogg@schneiderwallace.com

*Attorneys for Plaintiff, Class, and Collective*
*Members*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
## SAN DIEGO DIVISION

JENNIFER JANET TAYLOR,
individually and on behalf of all others
similarly situated,

        Plaintiff,

    v.

ECLIPSE SENIOR LIVING, INC,
ECLIPSE PORTFOLIO OPERATIONS
LLC, and EC OPCO CA PARTNER V
LLC,

        Defendants.

Case No. **'20 CV 0190 LAB WVG**

**COLLECTIVE AND CLASS ACTION**
**COMPLAINT FOR VIOLATIONS OF:**

(1)  Fair Labor Standards Act;
(2)  Failure to Pay for All Hours Worked
     (Cal. Lab. Code § 204);
(3)  Failure to Pay Overtime Wages (Cal.
     Lab. Code § 510);
(4)  Failure to Authorize and Permit and/or
     Make Available Meal and Rest Periods
     (Cal. Lab. Code §§ 226.7 and 512);
(5)  Failure to Provide Timely and Accurate
     Itemized Wage Statements (Cal. Lab.
     Code § 226);
(6)  Waiting Time Penalties (Cal. Lab.
     Code §§ 201-203);
(7)  Failure to Reimburse for Necessary
     Business Expenditures (Cal. Lab. Code
     § 2802);
(8)  Unlawful Business Practices (Cal. Bus.
     &  Prof. Code §§ 17200 *et seq.*);
(9)  Failure to Pay Vested Vacation Wages
     Upon Separation from
     Employment (Cal. Lab. Code § 227.3);
(10)  Failure to Provide Employee Records
     (Cal. Lab. Code §§ 1198.5, 432, and
     226

**DEMAND FOR JURY TRIAL**

## **INTRODUCTION**

1.     Plaintiff Jennifer Janet Taylor ("Plaintiff"), individually and on behalf of the Class and Collective members, brings this class and collective action on behalf of herself and other similarly situated individuals who have worked for Eclipse Senior Living, Inc., Eclipse Portfolio Operations LLC, and/or EC Opco CA Partner V LLC (individually and jointly referred to as "Defendants") as caregivers, assistants, technicians, nurses, nursing staff, nurse aides, and other non-exempt hourly employees[1] and have been subject to Defendants' policy and practice of deducting time from recorded hours for meal periods. Throughout the relevant time period, Plaintiff and similarly situated Resident Care Staff have been denied payment for all hours worked, including overtime, and have been denied meal and rest periods that comply with California law. This case implicates Defendants' longstanding policies and practices, which fail to properly compensate non-exempt employees for work performed during meal periods, for work performed while "off-the-clock," and for missed rest and meal periods.

2.     Defendants do not provide bona fide meal periods for their Resident Care Staff. Resident Care Staff who work for Defendants are required to remain responsible for resident care throughout their shift and are expected to perform duties while "off-the-clock." This includes during "meal periods" where Defendants automatically deduct 30 minutes each shift for a "meal period," even though Resident Care Staff remain on duty and are continuously subject to interruption during that time. Defendants' policies and practices result in Defendants' employees being responsible for resident care throughout their shift, even when they attempt to have a bite to eat.

3.     Defendants' policies and practices deny Resident Care Staff wages due under the Fair Labor Standards Act and California law. Under these policies and practices, non-exempt Resident Care Staff are not completely relieved of duties during

---

[1] While the precise job titles may differ, Plaintiff hereinafter uses the term "Resident Care Staff" interchangeably in referencing any of these similarly situated employees.

1   meal periods and are denied pay for those on-duty meal periods. Defendants continue
2   to require Resident Care Staff to remain on duty and subject to interruptions during
3   meal breaks.

4          4.       Defendants violate the FLSA and California law by knowingly and
5   willfully permitting Plaintiff, Class, and Collective members to perform work and/or
6   remain on duty during meal breaks, subjecting them to interruptions during those
7   times. Plaintiff, Class, and Collective members also perform work before clocking in
8   and after clocking out for which they are not compensated. Defendants are on notice
9   that Plaintiff, Class, and Collective members expect to be paid for their work on an
10  hourly basis. Defendants receive value from the work performed by Plaintiff, Class,
11  and Collective members during their meal periods, rest breaks, and while "off-the-
12  clock" without compensating them for their services. Defendants willfully,
13  deliberately, and voluntarily fail to pay Plaintiff, Class, and Collective members for
14  work performed.

15         5.       In addition, Plaintiff, Class, and Collective members were and are required
16  to work additional time outside of their scheduled shifts to keep up with the demands
17  of the job. Defendants were and are aware that Plaintiff, Class, and Collective
18  members perform this off-the-clock work, but fail to pay them at the applicable hourly
19  and overtime rates for this work time. This practice likewise violated and continues to
20  violate the FLSA and California state law.

21         6.       Further, upon information and belief, Defendants' vacation policy at all
22  relevant times provides that after one year of employment, all employees are eligible
23  for paid vacation time. The policy further provides that the number of vacation days
24  allocated each year depends upon the years of service with Defendants. Defendants
25  have unilaterally decided to violate California law in relation to their vacation policy
26  by forcing Plaintiff, Class, and Collective members to forfeit accrued vacation days,
27  and have failed to pay all vested vacation wages upon separation from employment.

28

7.     Defendants' conduct violated and continues to violate the FLSA because of the mandate that non-exempt employees, such as Plaintiff and the Collective members, be paid at one and one-half times their regular rate of pay for all hours worked in excess of forty within a single workweek. *See* 29 U.S.C. § 207(a).

8.     Plaintiff also pursues claims under the California Labor Code §§ 226.7 and 512 (failure to provide meal and rest periods); § 204 (failure to compensate for all hours worked); § 1194 (failure to pay minimum wage); § 510 (failure to pay overtime and double time wages), §§ 201-203 (waiting time penalties); § 226 (failure to provide timely and compliant itemized wage statements); § 227.3 (failure to pay all vested vacation wages); §§ 1198.5, 432, and 226 (failure to provide employee records); and California Business and Professions Code § 17200, et seq. (engaging in unfair and unlawful business practices).

9.     Plaintiff files this action to recover all unpaid wages, compensation, penalties, and other damages on behalf of herself, Class, Collective members under the FLSA as a 29 U.S.C. § 216(b) collective action, and under state law as a class action under Federal Rule of Civil Procedure 23. Plaintiff seeks to remedy the sweeping practices Defendants integrated into their time tracking and payroll policies, that have deprived Plaintiff, Class, and Collective of their lawfully-earned wages.

## SUBJECT MATTER JURISDICTION AND VENUE

10.     This court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 201, *et seq.* This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Defendants employ numerous Resident Care Staff in this district, including Plaintiff, and a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district. Defendants are subject to personal jurisdiction here.

**PARTIES**

12.    Plaintiff Jennifer Janet Taylor is an individual residing in La Mesa, California. Ms. Taylor was formerly employed as a nurse by Defendants at the Grossmont Gardens senior living facility in La Mesa, California, from approximately March 2019 to September 2019.

13.    The FLSA Collective members are people who are or who have been employed by Defendants as hourly non-exempt employees including, but not limited to, Resident Care Staff and other similar hourly and non-exempt employees throughout the United States within the three years preceding the filing of this Complaint.

14.    The Class members are all people who are or who have been employed by Defendants as hourly non-exempt employees including, but not limited to, Resident Care Staff and other similar hourly and non-exempt employees in the State of California within the four years preceding the filing of this Complaint.

15.    Upon information and belief, Defendant Eclipse Senior Living, Inc. is a foreign corporation registered to do business in California. Upon information and belief, Eclipse Senior Living, Inc. is the parent company of named Defendant Eclipse Portfolio Operations LLC. Upon information and belief, Eclipse Senior Living, Inc. owns and operates senior living communities throughout the country, including Grossmont Gardens located in La Mesa, California.

16.    Upon information and belief, Defendant Eclipse Portfolio Operations LLC is a foreign corporation registered to do business in California. Upon information and belief, Eclipse Portfolio Operations LLC manages a number of senior living communities throughout the country, including Grossmont Gardens in La Mesa, California. Upon information and belief, Eclipse Portfolio Operations LLC is a co-licensee of Grossmont Gardens according to the California Department of Social Services.

17.    Upon information and belief, Defendant EC Opco CA Partner V LLC is a foregin corporation registered to do business in California. Upon information and

belief, EC Opco Partner V LLC is the co-licensee of Grossmont Gardens according to the California Department of Social Services.

18.   Defendants each individually and/or jointly own, operate, and/or manage senior living communities throughout California and the United States.

19.   At all material times, Defendants have been employers within the meaning of the FLSA under 29 U.S.C. § 203(d).

20.   At all material times, Defendants have been an enterprise within the meaning of the FLSA under 29 U.S.C. § 203(r).

21.   At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

22.   Defendants acted as joint employers of Plaintiff because they jointly, directly or indirectly, controlled the employment terms, pay practices, timekeeping practices, and daily work of Plaintiff. Upon information and belief, Defendant Eclipse Senior Living, Inc. employed Class and Collective members jointly with the other Defendants and/or with currently unknown entities, because Defendants jointly, directly or indirectly, controlled the employment terms, pay practices, timekeeping practices, and daily work of Plaintiff and similarly situated employees.

23.   Defendants have had, and continue to have, an annual gross business volume of not less than $500,000, thereby exceeding the statutory standard. 26 U.S.C. § 203(s)(1)(A)(ii).

24.   In addition to Plaintiff, Defendants have employed numerous other employees, who like Plaintiff, are non-exempt hourly employees engaged in interstate commerce. Further, Defendants are engaged in interstate commerce since they order supplies across state lines, conduct business deals with merchants across state lines, and process patient credit cards with banks in other states.

25.    Plaintiff and Collective members were and are employees of Defendants within the meaning of 29 U.S.C. § 203(e).

26.    At all material times, Plaintiff and Collective members were employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

27.    At all material times, Defendants have done business under the laws of California, have places of business in the State of California, including in this judicial district, and have employed Class members in this judicial district. Defendants are a "person" as defined in California Labor Code § 18 and California Business and Professions Code § 17201. Defendants are also "employers" as that term is used in the California Labor Code and the IWC Wage Orders.

28.    Defendants are subject to general jurisdiction in California by virtue of operating no less than six senior living facilities in the State over an extensive period of time. Defendants make sales, solicit business, and otherwise engage in business in California. Defendants serve California's markets related to elderly care and nursing home facilities. Defendants have designated agents for service of process in California, hold licenses from the California Department of Social Services, and are otherwise registered businesses in California. Defendants further employ hundreds of workers in California, offering long-term services to California residents within the forum, purposefully directing their activities at California residents through advertising efforts and brick-and-mortar establishments, purposefully deriving benefit from their business activities within California, and purposefully availing themselves of the privilege of conducting activities within California, invoking the benefits and protections of California laws. Accordingly, Defendants' contacts within California are substantial, continuous, and systematic.

## **FACTS**

29.    Defendants operate upwards of 80 senior living facilities throughout the United States, including the senior living facility known as Grossmont Gardens, in La

Mesa, California.

30.     Defendants employ hundreds of hourly non-exempt workers similarly situated to Plaintiff in these senior living facilities throughout the country.

31.     Defendants' payroll policies and practices, applicable to all Resident Care Staff, do not compensate Resident Care Staff for the work performed during meal periods. Defendants do not require Resident Care Staff to clock out for their meal periods, but instead institute a timekeeping system that automatically deducts 30 minutes for every shift.

32.     Resident Care Staff are not permitted to take a 30-minute uninterrupted and bona fide meal period or rest breaks due to the demands of their jobs during the majority of their shifts. In the rare instances where they attempt a meal period or rest break, they remain on duty in that they are required to respond to calls from their residents, residents' families, other Resident Care Staff and facility staff, attend to the normal demands of the job, and otherwise respond to emergencies.

33.     Defendants encourage interruptions to Resident Care Staff meal periods and rest breaks by requiring Resident Care Staff to carry an electronic communication device with them at all times, so that they may receive calls/requests from the residents and facility personnel. Resident Care Staff are required to respond to these calls, even if they are taking a meal period or rest break.

34.     Plaintiff worked as a non-exempt nurse for Defendants from March 2019 to September 2019, and was paid $27.00 per hour for her services. As a nurse, Plaintiff's primary responsibilities included: providing resident care and monitoring, administering medicine to patients, interacting with other facility employees and visitors, communicating with residents' off-site doctors and pharmacists, and responding to emergency situations. Plaintiff was subjected to Defendants' time, pay, meal break, and overtime policies and practices. Plaintiff routinely performed work during her entire shift, was subject to interruptions during attempted meal and rest breaks, and in fact was interrupted or denied meal and rest breaks on a regular basis.

Plaintiff also performed work while "off-the-clock" with Defendants' knowledge and was denied compensation for the time she spent engaged in this work.

35.    Resident Care Staff's "off-the-clock" work included cleaning, preparing and organizing equipment, interacting with patients and residents' family members, assisting other facility staff, charting, completing paperwork related to resident care, and performing other various tasks before clocking in and after clocking out for the day. Defendants discouraged Resident Care Staff from recording work hours performed outside of their scheduled shifts.   Even though Resident Care Staff regularly arrive earlier and begin working prior to the start of their shift and routinely work past the end of their shifts Defendants set strict clock in and clock out procedures requiring Resident Care Staff to clock in and out within a few minutes of their scheduled start and end times regardless of when they actually started or ended their work. Resident Care Staff members were not compensated for this work performed outside of their recorded hours.

36.    Class and Collective members were and are employed by Defendants and performed work materially similar to Plaintiff.

37.    Resident Care Staff report to a facility owned, operated, or managed by Defendants to perform their jobs.

38.    Resident Care Staff perform their jobs under Defendants' supervision and using materials and technology approved and supplied by Defendants.

39.    Resident Care Staff are required to follow and abide by common work, time, pay, meal and rest break, and overtime policies and procedures in the performance of their jobs.

40.    At the end of each pay period, Resident Care Staff receive wages from Defendants that are determined by common systems and methods that Defendants select and controll.

41.    Defendants pay Resident Care Staff members on an hourly rate basis.

42.    Defendants' vacation policy provides that employees, including Resident Care Staff, accrue a certain number of vacation days each year depending upon the length of service with Defendants.

43.    Upon information and belief, Defendants implemented a "use it or lose it" policy with regard to accrued vacation, where employees who do not use their accrued vacation within the calendar year are forced to forfeit those vacation days at the beginning of the next calendar year.

44.    Plaintiff is informed, believes, and thereon alleges, that Defendants do not and did not pay Class members for all earned vacation time that was unused and improperly forfeited. Plaintiff is also informed, believes, and thereon alleges, that Defendants do not and did not pay Plaintiff and Class members for all earned vacation time upon separation of employment.  As a result, Plaintiff and Class members are harmed in being forced to improperly forfeit these earned vacation days.

45.    Plaintiff often worked more than 8 hours a day, and more than forty hours in a week, and did so on at least one workweek during the three years before this Complaint was filed. On average, Plaintiff worked 9 to 12 hours each shift and five shifts per week. On average, Plaintiff worked more than 40 hours in a workweek every week.

46.    Upon information and belief Class and Collective members worked more than 8 hours a day, and more than forty hours in at least one workweek during the three years before this Complaint was filed.

47.    Defendants require Resident Care Staff to perform substantial work off-the-clock and without compensation. Defendants require Resident Care Staff members to clock in and out of work using company-issued software. Resident Care Staff perform work while off-the-clock for the benefit of Defendants, including charting, resident care, and assisting other facility personnel. As a result of this off-the-clock work, Resident Care Staff are not adequately compensated for all hours worked at their regular rate or at the applicable overtime rates. On average, Plaintiff works

approximately 30 to 60 additional minutes of work while off-the-clock each shift, not including work performed during meal and break periods.

48.    For example, Resident Care Staff are required to clock out at the end of their regular shift, but are required to stay and finish paperwork while off-the-clock at the direction of their supervisors. This paperwork includes charting, sending faxes to doctors and pharmacies, and requesting doctor approvals for treatments for residents. Resident Care Staff are also sometimes required to continue working after clocking out because of residents coming and going from a separate medical facility, which they must document. Resident Care Staff are also required to treat residents, clean the facilities, restock supplies, and ensure medications are stocked even after clocking out. Resident Care Staff also interact and communicate with residents, residents' families, and residents' medical providers while off-the-clock.

49.    Throughout the relevant time period, Defendants also expected and required Resident Care Staff to be available to work during their entire shifts, even during any attempted meal and rest breaks.

50.    As a result, Defendants routinely deny Plaintiff and other Resident Care Staff timely and compliant off-duty meal periods and rest periods. Specifically, Defendants routinely refuse to authorize, permit, and/or make available to Resident Care Staff timely and compliant thirty-minute meal periods as required by law. Furthermore, Defendants often require Resident Care Staff to work in excess of ten hours per day, but do not authorize, permit, and/or make available to them a second thirty-minute meal period as required by law. Likewise, Defendants routinely refuse to authorize or permit resident care staff to take ten-minute rest periods as required by law.

51.    To the contrary, despite automatically deducting a 30 minute meal period from Plaintiff's and Resident Care Staffs' time, Defendants instruct Resident Care Staff to falsely report on their time sheets they took a meal break through an "attestation system," with complete indifference as to whether Resident Care Staff in

fact were able to, and did, take a meal break. And if Resident Care Staff fail to document that they took a meal break or otherwise alert Defendants that they did not receive a meal break, Defendants will often threaten Resident Care Staff with reprimands and write-ups, such as writing up workers for "unapproved overtime."

52.    Beyond Defendants' failure to authorize or permit meal and rest breaks, Resident Care Staff's schedules are too busy, resident care demands too high, and Defendants' pressure to complete job assignments too constant, for Resident Care Staff to take compliant meal or rest breaks. Defendants monitor Plaintiff and other Resident Care Staff throughout the day, including by electronic communication device, directing them to go from resident to resident without breaks.

53.    As a result, the time worked by Plaintiff and other Resident Care Staff goes unrecorded and uncompensated. Further, Defendants fail to pay Plaintiff and other Resident Care Staff premium wages for their missed breaks. This uniformly violates California law.

54.    When Plaintiff and Collective members worked more than forty hours in a workweek, Defendants failed to pay them one and one-half times their regular hourly rate for all overtime hours worked in violation of the FLSA. Defendants fail to include time worked during meal periods, as well as "off-the-clock" work in the total hours worked in a given work week. Work preformed during meal periods is compensable under the FLSA because: (1) Defendants automatically deduct thirty minutes from Plaintiff's and Collective members' time; (2) Plaintiff and Collective members are not completely relieved of their duties during their meal breaks, (3) Plaintiff's and Collective members' meal periods are interrupted or subject to interruptions with work duties, and (4) Plaintiff and Collective members entirely skipped meal periods due to work demands.

55.    Similarly, Plaintiff and Class members are often denied overtime for all work performed in excess of eight hours per day or 40 hours per week in violation of California law. Plaintiff and Class members are typically scheduled to work shifts of

eight and one-half hours, however, Plaintiff and Class members regularly work additional hours beyond their normally scheduled shifts. Plaintiff and Class members regularly work five days consecutively. Plaintiff and Class members are also denied double time for work over 12 hours in one day.

56.   Defendants do not provide Class members, including Plaintiff, accurate itemized wage statements as required by California law. The wage statements they are provided are not accurate because they do not reflect the actual hours worked by Plaintiff and Class members. The wage statements do not contain off-the-clock work or time that should be compensable during interruptible meal breaks. Further, the wage statements are inaccurate because they do not include premium pay for missed breaks, overtime, and double time for all hours worked.

57.   Defendants often do not provide Class members, including Plaintiff, with full payment of all wages owed at the end of employment. As these workers are owed for off-the-clock work, unpaid overtime, and premium pay when their employment ends, and these amounts remain unpaid under Defendants' policies and practices, Defendants fail to pay all wages due upon termination. As a consequence, Defendants are subject to waiting time penalties.

58.   Defendants also require Class members, including Plaintiff, to pay for necessary work-related expenses. For example, Plaintiff and Class members are expected to pay out of pocket for equipment used for the benefit of Defendants, including stethoscopes, finger pulse oximeters, blood pressure cuffs, non-slip shoes, and other supplies.

59.   Defendants have employed hundreds of people similarly situated to Plaintiff during the four-year period prior to the filing of this Complaint.

60.   Defendants' method of paying Plaintiff, Class, and Collective members was willful, and was not based on a good faith and reasonable belief that their conduct complied with either the FLSA or California law.

1   61.   Defendants' common course of wage-and-hour abuse includes routinely

2   failing to maintain true and accurate records of the hours worked by Class and

3   Collective members. In particular, Defendants have failed to record hours that

4   Plaintiff, Class, and Collective members worked during missed meal and rest breaks as

5   well as hours worked off the clock.

6   62.   Defendants' conduct was willful, carried out in bad faith, and caused

7   significant damages to non-exempt hourly employees in an amount to be determined at

8   trial.

9   63.   On August 29, 2019, Plaintiff Taylor sent correspondence to Defendant

10   Eclipse Senior Living, Inc.'s Human Resources department requesting copies of her

11   personnel files and records relating to her performance or to any grievance, pursuant to

12   Cal. Lab. Code § 1198.5, any instrument signed by her relating to the obtaining or

13   holding of employment, pursuant to Cal. Lab. Code § 432, and any and all payroll

14   records, pursuant to Cal. Lab. Code § 226. As of the date of this filing, Defendants

15   have not provided any of the requested records to Plaintiff Taylor or her counsel.

16   **FLSA COLLECTIVE ACTION ALLEGATIONS**

17   64.   Plaintiff brings this Complaint as a collective action pursuant to 29 U.S.C.

18   § 216(b) as to claims for failing to pay Plaintiff and Collective members for all hours

19   worked, including minimum wage, wages at the agreed rate, and overtime

20   compensation for all hours worked over 40 hours per week, liquidated damages, and

21   attorneys' fees and costs under the FLSA.  The FLSA Collective that Plaintiff seeks to

22   represent is defined as follows:

23
24
25
26   **All current and former hourly, non-exempt employees, including but not limited to caregivers, technicians, assistants, nursing staff, nursing aides, or other employees with similar job duties employed by Defendants nationwide during the time period three years prior to the filing of the original Complaint until resolution of this action (the "Collective").**

27
28

65.     Per 29 U.S.C. § 216(b), this action may be brought as an "opt-in" collective action for the claims asserted by Plaintiff because her claims are similar to the claims possessed by the Collective members.

66.     Plaintiff and Collective members have been denied compensation for time worked, including meal breaks worked or interrupted and "off-the-clock" work. In addition, Plaintiff has actual knowledge that Collective members have also been denied overtime pay for this work and would therefore likely join this collective action if provided a notice of their rights to do so, together with a clear statement that opting to join such an action would not result in termination or other forms of retaliation.

67.     Plaintiff is similarly situated to Collective members. Like Plaintiff, Defendants subjected Collective members to its common practice, policy, or plan of refusing to pay overtime for all work performed in clear violation of the FLSA.

68.     Other Resident Care Staff similarly situated to Plaintiff work, or have worked, for Defendants and were similarly not paid overtime at the rate of one and one-half times their regular hourly rate when those hours exceeded forty per workweek. Other Resident Care Staff similarly situated to Plaintiff are not compensated for automatically-deducted meal breaks during which they are not completely relieved of their duties, or are interrupted, interruptible, or entirely missed due to work demands. Other Resident Care Staff similarly situated to Plaintiff also performed compensable work while "off-the-clock" either before their shift began or after it ended. Similarly situated Resident Care Staff were not paid overtime at the rate of one and one-half times their regular hourly rate when the work performed during meal breaks or "off-the-clock" caused them to work in excess of forty hours per workweek.

69.     Collective members perform or have performed the same or similar work as Plaintiff involving patient care.

70.     Collective members regularly work or have worked in excess of forty hours during a workweek.

71.   Collective members are not exempt from receiving overtime compensation under the FLSA.

72.   Defendants' failure to pay overtime compensation as required by the FLSA resulted from generally applicable policies and practices, and did not depend on the personal circumstances of FLSA Collective members.

73.   This action may be properly maintained as a collective action on behalf of the defined Collective because, throughout the relevant time period:

    a.   Defendants maintain common scheduling systems and policies with respect to Plaintiff and Collective members, control the scheduling systems and policies implemented throughout their facilities and retain authority to review and revise or approve the schedules assigned to Plaintiff and Collective members;

    b.   Defendants maintain common timekeeping systems and policies with respect to Plaintiff and Collective members;

    c.   Defendants maintain common payroll systems and policies with respect to Plaintiff and Collective members, control the payroll systems and policies applied to Plaintiff and Collective members, and set the pay rates assigned to Plaintiff and Collective members; and

    d.   Defendants control the meal break work policies and practices at issue in this litigation and have the ability to deprive Plaintiff and Collective members of wages owed for meal break work they performed.

74.   Collective members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek, including for interrupted, on-duty, or missed meal breaks, as well as "off-the-clock" work.

75.   Plaintiff and Collective members' claims arise from a common nucleus of operative facts; namely, the continued and willful failure of Defendants to comply with their obligation to legally compensate their employees. Liability is based on a

systematic course of wrongful conduct by Defendants that caused harm to all Collective members. Defendants had a plan, policy or practice of not paying Plaintiff and Collective members for interrupted, interruptible, or missed meal and rest breaks, as well as work performed "off-the-clock."

76.     As such, the Collective of similarly situated Plaintiffs is properly defined as stated above. Plaintiff estimates the Collective, including both current and former employees over the relevant time period, will include upwards of 100 people or more. The precise number of Collective members should be readily available and identifiable from Defendants' personnel, scheduling, time and payroll records, and from input received from Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). The names and addresses of the Collective members are discoverable from Defendants' records.

## RULE 23 CLASS ACTION ALLEGATIONS

77.     Plaintiff brings causes of action as a class action on behalf of herself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). The California Class that Plaintiff seeks to represent is defined as follows:

> **All current and former hourly, non-exempt employees, including but not limited to caregivers, technicians, assistants, nursing staff, nursing aides, or other employees with similar job duties employed by Defendants in California any time starting four years prior to the filing of this Complaint until resolution of this action.**

78.     This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

79.     <u>Numerosity</u>:  The potential members of the class are so numerous that joinder of all the members of the Class is impracticable. Plaintiff is informed and believes that the number of California Class members exceeds 40. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the California Class as a

plaintiff in this action is impracticable. Furthermore, the identities of the California Class will be determined from Defendants' records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the California Class and Defendants.

80.    <u>Commonality</u>:  There are questions of law and fact common to Plaintiff and the California Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to:

      i.   Whether Defendants fail to compensate Class members for all hours worked, including as overtime compensation, in violation of the Labor Code and Wage Orders;

     ii.   Whether Defendants have a policy and/or practice of requiring Class members to be in the control of, spend time primarily for the benefit of, and work for Defendants off-the-clock and without compensation;

    iii.   Whether Defendants fail to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to Class  members in violation of the Labor Code and Wage Orders;

    iv.   Whether Defendants fail to authorize and permit, make available, and/or provide Class members with timely meal and rest periods which they are entitled in violation of the Labor Code and Wage Orders;

     v.   Whether Defendants fail to provide Class members with timely, accurate itemized wage statements in violation of the Labor Code and Wage Orders;

vi.  Whether Defendants fail to timely pay Class members for all wages owed upon termination of employment in violation of the Labor Code;

vii.  Whether Defendants failed to pay vested vacation upon separation from employment in violation of Labor Code § 227.3;

viii.  Whether Defendants violate Business and Professions Code §§ 17200 *et seq*., by:

(a.)  failing to compensate Class members for all hours worked, including at minimum wage and as overtime compensation;

(b.)  failing to pay Class members minimum wage for all hours worked;

(c.)  failing to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to Class members;

(d.)  failing to authorize and permit, make available, and/or provide Class members with timely meal and rest periods to which they are entitled;

(e.)  failing to reimburse Class members for reasonable and necessary business expenses;

(f.)  failing to provide putative Class members with timely, accurate itemized wage statements; and

(g.)  failing to timely pay putative Class members for all wages owed upon termination of employment; and

ix.  The proper formula for calculating restitution, damages and penalties owed to Plaintiff and the Class as alleged herein.

81.  <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the California Class. Defendants' common course of conduct in violation of law as alleged herein

caused Plaintiff and Class members to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and co-extensive with the claims of the Class.

82.     Adequacy of Representation:  Plaintiff seeks relief for state law violations perpetrated by Defendants. In that sense, Plaintiff does not have any conflicts of interest with other Class members and will prosecute the case vigorously on behalf of the Class. Counsel representing Plaintiff is competent and experienced in litigating complex cases and large class actions, including wage and hour cases. Plaintiff will fairly and adequately represent and protect the interests of the Class members.

83.     Superiority of Class Action:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each proposed Class member has been damaged and is entitled to recovery by reason of Defendants' illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

84.     In the alternative, the Class may be certified because the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants.

85.     If each individual Class member were required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each member of the Class with Defendants' vastly superior financial legal resources.

86.     Requiring each individual Class member to pursue an individual remedy would also discourage the assertion of lawful claims by the Class members who would be disinclined to pursue these claims against Defendants because of an appreciable and

1    justifiable fear of retaliation and permanent damage to their lives, careers and well-

2    being.

3    **FIRST CAUSE OF ACTION**
     **Violations of 29 U.S.C. § 207**
4    **Failure to Pay Overtime Compensation for**
     **Improper Meal Break Time Deductions**
5    **(FLSA Collective Action)**

6    87.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though

7    fully set forth herein.

8    88.   Plaintiff and Collective members, Defendants' Resident Care Staff, are

9    similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

10    89.   The FLSA requires each covered employer to compensate all non-exempt

11    employees at a rate of not less than one and one-half times their regular hourly rate for

12    all hours worked in excess of forty hours per week.

13    90.   Throughout the relevant time period, Defendants instituted a timekeeping

14    practice of automatically deducting 30 minutes for a meal period from Plaintiff and

15    Collective members' time records for each shift worked. However, Defendants

16    expected and required Plaintiff and Collective members to be available to work and/or

17    to be on duty during their unpaid meal breaks.

18    91.   Plaintiff and Collective members have been harmed as a direct and

19    proximate result of Defendants' unlawful conduct because they have been deprived of

20    wages owed for work they performed and from which Defendants derived a direct and

21    substantial benefit.

22    92.   Defendants cannot satisfy their burden of proof to demonstrate that

23    Plaintiff and Collective members received a bona fide uninterrupted meal period for

24    every 30 minutes automatically deducted from their time.

25    93.   Defendants violated and continue to violate the FLSA by failing to pay

26    Plaintiff and Collective members for work performed during unpaid meal breaks under

27    29 U.S.C. § 207 as non-exempt employees. Because of these violations, Plaintiff and

28    Collective members have suffered a loss of wages, including overtime wages.

94.     Defendants' failure to pay overtime to Plaintiff and Collective members, in violation of the FLSA, was willful and not based on a good-faith belief that their conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Accordingly, a three-year limitations period should apply to Plaintiff and Collective members' claims.

95.     Because of Defendants' willful violation, Plaintiff and Collective members are also due an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

96.     Plaintiff and Collective members are further entitled to reasonable attorneys' fees and costs of the action in addition to any judgment awarded.

97.     Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

**SECOND CAUSE OF ACTION**
**Violations of 29 U.S.C. § 207**
**Failure to Pay Overtime Compensation for "Off-The-Clock" Work**
**(FLSA Collective Action)**

98.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

99.     Throughout the relevant time period, Defendants suffered and/or permitted Plaintiff and Collective members to work additional time outside of their shifts for work-related tasks. These tasks included, but were not limited to, charting, checking on residents, cleaning, stocking supplies, interacting with facility staff, communicating with residents' medical providers and family members, responding to emergencies, and assisting other facility staff with various tasks.

100.    Defendants actively discourage Plaintiff and Collective members from logging time outside the parameters set by Defendants. However, due to the demands of the job, Plaintiff routinely performed work-related tasks outside of her scheduled shift, before she clocked in and after she clocked out. Upon information and belief,

Defendants treated Collective members similarly with respect to "off-the-clock" work.

101. Accordingly, consistent with the policies and procedures set up by Defendants, Plaintiff performed work in excess of forty hours per workweek for which she was not compensated at an overtime rate of pay. Defendants' policies and practices favored Defendants at the expense of Plaintiff and Collective members.

102. Defendants violated and continue to violate the FLSA when they failed to pay Plaintiff and Collective members for "off-the-clock" work under 29 U.S.C. § 207 as a non-exempt employee. Because of these violations, Plaintiff and Collective members suffered wage losses during weeks where the total time worked (logged and unlogged) exceeded forty hours.

103. Defendants' failure to pay overtime to Plaintiff and Collective members, was willful and not based on a good-faith belief that their conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Accordingly, a three-year limitations period should apply to Plaintiff and Collective members' claims.

104. Because of Defendants' willful violation, Plaintiff and Collective members are also due an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

105. Plaintiff and Collective members are further entitled to reasonable attorneys' fees and costs of the action in addition to any judgment awarded.

106. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## THIRD CAUSE OF ACTION
### Failure to Pay for All Hours Worked Pursuant to California Labor Code § 204
### (On Behalf of the Class)

107. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

108. Defendants willfully engaged in and continue to engage in a policy and practice of not compensating Plaintiff and putative Class members for all hours

worked or spent in its control.

109.   Defendants regularly schedule Plaintiff and the putative Class members to work shifts of eight-and-one-half hours. However, Defendants intentionally and willfully require Plaintiff and the Class members to complete additional work off-the-clock, in excess of their scheduled shifts and often as high as twelve hours per day. For example, Resident Care Staff routinely perform work functions before clocking in and after clocking out such as charting, checking on residents, cleaning, stocking supplies, interacting with facility staff, communicating with residents' medical providers and family members, responding to emergencies, and assisting other facility staff with various task. Moreover, Resident Care Staff are required to clock out for meal periods. However, Plaintiff and Class members routinely work through or are otherwise subject to interruption during their meal period.  They are not compensated for that work. As a result, Defendants fail to pay Plaintiff and the Class members for all hours worked and fail to track their actual hours worked.

110.   Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

111.   Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

112.   Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

113.   IWC Wage Order 4-2001(2)(K) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

114.   Defendants require Plaintiff and the Class to work off-the-clock without compensation.  In other words, Plaintiff and the Class are forced to perform work for the benefit of Defendants without compensation.

115.   In violation of California law, Defendants knowingly and willfully refuse to perform their obligations to provide Plaintiff and the Class with compensation for all time worked.  Defendants regularly fail to track the time Plaintiff and the Class actually work or to compensate them for hours worked. Therefore, Defendants committed, and continue to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiff and the Class members' rights.  Plaintiff and the Class are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

116.   As a proximate result of the aforementioned violations, Plaintiff and the Class have been damaged in an amount according to proof at time of trial.

117.   Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## FOURTH CAUSE OF ACTION
### Failure to Pay Overtime Wages Pursuant to Labor Code § 510
### (On Behalf of the Class)

118.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

119.   Defendants do not compensate Plaintiff and Class members with appropriate overtime, including time and a half and double time, as required by California law.

120.   Labor Code § 510 provides as follows:

> Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess

of eight hours on any seventh day of a workweek shall be compensated at

121.   The IWC Wage Order 4-2001(3)(A)(1) states:

The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than: . . . One and one-half (1 ½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and … [d]ouble the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

122.   Labor Code § 1194(a) provides as follows:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

123.   Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."  All such wages are subject to California's overtime requirements, including those set forth above.

124.   Defendants regularly require Plaintiff and Class members to work in excess of eight hours per day and forty hours per week, but do not compensate them at an overtime rate for all of this work. Furthermore, Defendants regularly do not compensate Plaintiff and the Class members at a double time rate for hours worked in

excess of twelve hours each day or after eight hours on the seventh consecutive day of work.

125.   Plaintiff and Class members have worked overtime hours for Defendants without being paid overtime premiums in violation of the Labor Code, applicable IWC Wage Orders, and other applicable law.

126.   Defendants have knowingly and willfully refused to perform their obligations to compensate Plaintiff and the Class members for all premium wages for overtime work. As a proximate result of the aforementioned violations, Defendants have damaged Plaintiff and the Class members in amounts to be determined according to proof at time of trial,

127.   Defendants are liable to Plaintiff and the Class alleged herein for the unpaid overtime and civil penalties, with interest thereon. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

128.   Wherefore, Plaintiff and the Class request relief as hereinafter provided.

## FIFTH CAUSE OF ACTION
### Failure to Authorize and Permit and/or Make Available Meal and Rest Periods Pursuant to Labor Code §§ 226.7 and 512
### (On Behalf of the Class)

129.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

130.   Defendants routinely do not make meal periods available to Plaintiff and Class members.  Despite long work days regularly lasting in excess of nine hours, Plaintiff and putative Class members are often unable to take a meal break, are often prevented from timely taking a meal break, are subject to interruption during their meal breaks, and are frequently interrupted during their meal breaks. When Plaintiff and Class members work more than ten hours in a day, Defendants often do not make a second meal period available to them.

131.   Plaintiff and Class members are not paid one hour of premium pay for the missed breaks. Rather, Defendants require Plaintiff and Class members to clock out for

their meal breaks while still requiring them to remain on duty and as a result Plaintiff and Class members are routinely denied compliant meal periods.

132.   Similar to meal periods, Defendants regularly fail to make rest periods available to Plaintiff and Class members. Plaintiff's and Class members' schedules regularly prevent them from taking rest periods throughout the day. When available, if ever, they are often not compliant. Instead, they are generally untimely or short. Plaintiff and Class members do not receive premium pay for their missed breaks as required by California law.

133.   Labor Code §§ 226.7 and 512 and the applicable Wage Orders requires Defendants to authorize and permit meal and rest periods to their employees. Labor Code §§ 226.7 and 512 and the Wage Orders prohibit employers from employing an employee for more than five hours without a meal period of not less than thirty minutes, and from employing an employee more than ten hours per day without providing the employee with a second meal period of not less than thirty minutes. Labor Code § 226.7 and the applicable Wage Orders also require employers to authorize and permit employees to take ten minutes of net rest time per four hours or major fraction thereof of work, and to pay employees their full wages during those rest periods. Unless the employee is relieved of all duty during the thirty-minute meal period and ten-minute rest period, the employee is considered "on duty" and the meal or rest period is counted as time worked under the applicable Wage Orders.

134.   Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who fails to authorize, permit, and/or make available a required meal period must, as compensation, pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period was not authorized and permitted. Similarly, an employer must pay an employee denied a required rest period one hour of pay at the employee's regular rate of compensation for each workday that the rest period was not authorized and permitted and/or not made available.

135.   Despite these requirements, Defendants have knowingly and willfully refused to perform their obligations to authorize and permit and/or make available to Plaintiff and the Class the ability to take the off-duty meal and rest periods to which they are entitled. Defendants have also failed to pay Plaintiff and the Class one hour of pay for each off-duty meal and/or rest periods that they are denied. Defendants' conduct described herein violates Labor Code §§ 226.7 and 512.  Therefore, pursuant to Labor Code § 226.7(b), Plaintiff and the Class are entitled to compensation for the failure to authorize and permit and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

136.   As a proximate result of the aforementioned violations, Plaintiff and the Class have been damaged in an amount according to proof at time of trial.

137.   Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## SIXTH CAUSE OF ACTION
### Failure to Provide Accurate Itemized Wage Statements Pursuant to Labor Code § 226
### (On Behalf of the Class)

138.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

139.   Defendants do not provide Plaintiff and Class members with accurate itemized wage statements as required by California law.

140.   Labor Code § 226(a) provides:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or

her social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee …. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

141. IWC Wage Order 4-2001(7) establishes similar wage statement requirements.

142. Labor Code § 226(e) provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

143. Plaintiff seeks to recover actual damages, costs and attorneys' fees under this section.

144. Defendants do not provide timely, accurate itemized wage statements to Plaintiff and putative Class members in accordance with Labor Code § 226(a) and the IWC Wage Orders. The wage statements Defendants provide their employees, including Plaintiff and putative Class members, do not accurately reflect the actual hours worked, actual gross wages earned, or actual net wages earned.

145. Defendants are liable to Plaintiff and the putative Class alleged herein for the amounts described above in addition to the civil penalties set forth below, with interest thereon. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor Code § 226(e).

146. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## SEVENTH CAUSE OF ACTION
### Waiting Time Penalties Pursuant to Labor Code §§ 201-203
### (On Behalf of the Class)

147.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

148.   Defendants do not provide Class members with their wages when due under California law after their employment with Defendants ends.

149.   Labor Code § 201 provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

150.   Labor Code § 202 provides:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

151.   Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

152.   Plaintiff and some of the putative Class members left their employment with Defendants during the statutory period, at which time Defendants owed them unpaid wages. These earned, but unpaid, wages derive from time spent working for the benefit of Defendants, which went unrecorded and/or uncompensated.

153.   Defendants willfully refused and continue to refuse to pay Plaintiff and Class members all the wages that were due and owing to them, in the form of uncompensated off-the-clock time, overtime, and meal and rest period premium pay, upon the end of their employment as a result of Defendants' willful failure to provide Class members with payment for all hours worked, overtime, and meal and rest breaks.

As a result of Defendants' actions, Plaintiff and Class members have suffered and continue to suffer substantial losses, including lost earnings, and interest.

154.   Defendants' willful failure to pay Plaintiff and Class members the wages due and owing them constitutes a violation of Labor Code §§ 201-202.  As a result, Defendants are liable to Plaintiff and Class members for all penalties owing pursuant to Labor Code §§ 201-203.

155.   In addition, Labor Code § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due. Therefore, the Class members are entitled to penalties pursuant to Labor Code § 203, plus interest.

156.   Wherefore, Plaintiff and the Class request relief as hereinafter provided.

**EIGHTH CAUSE OF ACTION**
**Failure to Reimburse for Necessary Business Expenditures Pursuant to Labor Code § 2802**
**(On Behalf of the Class)**

157.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

158.   Defendants do not reimburse Plaintiff and putative Class members for necessary business expenditures.

159.   Labor Code § 2802 provides, in relevant part:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful. … For the purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

160.   Defendants regularly require Plaintiff and Class members to pay out of pocket for non-slip shoes, stethoscopes, finger pulse oximeters, and other supplies for the benefit of Defendants' business operations. Defendants are and were aware that Class members incur these business expenses and yet do not reimburse their workers.

161. Defendants are liable to Plaintiff and the Class members for the unreimbursed expenses and civil penalties, with interest thereon. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

162. Wherefore, Plaintiff and the Class request relief as hereinafter provided.

**NINTH CAUSE OF ACTION**
**Forfeiture of Vested Vacation Wages**
**Pursuant to Labor Code § 227.3 & Public Policy**
**(On behalf of the Class)**

163. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

164. California Labor Code § 227.3 states as follows:

> Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served[.]

165. As a general principle, California law prohibits an employer from requiring the forfeiture of vacation time. *Rhea v. Gen. Atomics*, 227 Cal. App. 4th 1560, 1571, 174 Cal. Rptr. 3d 862, 870 (2014). California has a policy of "jealously protect[ing]" wages for the benefit of employees, and the effect of "section 227.3" and interpreting cases is to "prohibit *any* forfeiture of a private employee's vested vacation time." *Boothby v. Atlas Mech., Inc.*, 6 Cal. App. 4th 1595, 1601, 8 Cal. Rptr. 2d 600, 604 (1992). Under California law, "vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed." *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 779 (1982). When an employer offers vacation pay pursuant to either policy or contract, it "constitutes deferred wages for services rendered." *Id.* at 784.

166. "When vacation is earned during a period of employment (for example, two weeks of paid vacation annually) and the employee does not complete the period, section 227.3 requires compensation for a pro rata share of the unused vacation based

1   on the percentage of the period completed." *Boothby*, 6 Cal. App. 4th at 1601.

2   167.   A "use it or lost it" vacation policy provides for forfeiture of vested

3   vacation if not used within a designated time, while a "no additional accrual" vacation

4   policy prevents an employee from earning vacation over a certain limit. Although both

5   policies achieve virtually the same result, the former is impermissible and the latter

6   permissible. *Id.*

7   168.   Defendants have violated § 227.3 by failing or refusing to pay wages in

8   lieu of vested vacation time after employees' separation from employment. Defendants

9   have further violated § 227.3 and California law by implementing a "use it or lose it"

10   policy which forces employees to forfeit accrued but unused vacation time on a yearly

11   basis.

12   169.   Defendants are liable to Plaintiff and the Class members for the unpaid

13   wages owed as vested vacation and penalties, with interest thereon. Furthermore,

14   Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

15   170.   Wherefore, Plaintiff and the Class request relief as hereinafter provided.

16   **TENTH CAUSE OF ACTION**
**Violation of California Business and Professions Code §§ 17200 *et seq.***

17   **(On Behalf of the Class)**

18   171.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though

19   fully set forth herein.

20   172.   California Business and Professions Code § 17200, *et seq.*, prohibits unfair

21   competition in the form of any unlawful, unfair, or fraudulent business acts or

22   practices.

23   173.   Business and Professions Code § 17204 allows a person injured by the

24   unfair business acts or practices to prosecute a civil action for violation of the UCL.

25   174.   Labor Code § 90.5(a) states it is the public policy of California to

26   vigorously enforce minimum labor standards in order to ensure employees are not

27   required to work under substandard and unlawful conditions, and to protect employers

28   who comply with the law from those who attempt to gain competitive advantage at the

1  expense of their workers by failing to comply with minimum labor standards.

2  175. Beginning at an exact date unknown to Plaintiff, but at least since the date

3  four years prior to the filing of this suit, Defendants have committed acts of unfair

4  competition as defined by the UCL, by engaging in the unlawful, unfair, and

5  fraudulent business acts and practices described in this Complaint, including, but not

6  limited to:

7        a. violations of Labor Code § 1194 and IWC Wage Order 4-2001

8          pertaining to payment of wages;

9        b. violations of Labor Code § 510 and Wage Order 4-2001 pertaining to

10          overtime;

11        c. violations of Labor Code §§ 226.7 and 512 and Wage Order 4-2001

12          pertaining to meal and rest breaks;

13        d. violations of Labor Code § 226 regarding accurate, timely itemized

14          wage statements;

15        e. violations of Labor Code § 2802 regarding indemnification for

16          necessary business expenditures; and

17        f. violations of Labor Code §§ 201-203 pertaining to waiting time

18          penalties.

19  176. The violations of these laws and regulations, as well as of the fundamental

20  California public policies protecting wages, serve as unlawful predicate acts and

21  practices for purposes of Business and Professions Code §§ 17200 *et seq.*

22  177. The acts and practices described above constitute unfair, unlawful and

23  fraudulent business practices, and unfair competition, within the meaning of Business

24  and Professions Code §§ 17200 *et seq*. Among other things, the acts and practices have

25  taken from Plaintiff and the Class wages rightfully earned by them, while enabling

26  Defendants to gain an unfair competitive advantage over law-abiding employers and

27  competitors.

28

178.   Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent Defendants from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

179.   As a direct and proximate result of the aforementioned acts and practices, Plaintiff and the Class members have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

180.   Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition. Plaintiff and the Class are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from employees during the four-year period prior to the filing of this Complaint.  Plaintiff's success in this action will enforce important rights affecting the public interest and in that regard Plaintiff sues on behalf of himself as well as others similarly situated. Plaintiff and putative Class members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

181.   Plaintiff herein takes upon herself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate pursuant to Code of Civil Procedure §1021.5 and otherwise.

182.   Wherefore, Plaintiff and the Class request relief as hereinafter provided.

### ELEVENTH CAUSE OF ACTION
**Penalties for Failure to Furnish Records Pursuant to Labor Code § 1198.5, 432, and 226**
**(On behalf of Plaintiff individually against Defendants)**

183.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

184.   California Labor Code § 1198.5(a) states that "[e]very current and former employee, or their representative, has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee." "The employer shall make the contents of those personnel records available for inspection . . . not later than 30 calendar days from the date the employer receives a written request" unless the parties agree in writing to a date beyond 30 calendar days. *Id.* § 1198.5(b)(1). If an employer fails to permit an employee or their representative to inspect or copy personnel records within the time specified by § 1198.5, the employee may recover a penalty of $750 from the employer. *Id.* § 1198.5(k).

185.   California Labor Code § 432 states: "If an employee or applicant signs any instrument relating to the obtaining or holding of employment, he [or she] shall be given a copy of the instrument upon request." Documents covered by § 432, including potential employment agreements, are also covered by § 1198.5.

186.   California Labor Code § 226(c) states, in part: "An employer who receives a written or oral request to inspect or receive a copy of records [pertaining to a current or former employee's pay records] shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request." If the employer fails to comply with this written request for pay records within that 21 day time period "entitles the current or former employee . . . to recover a seven-hundred-fifty-dollar ($750) penalty from the employer." *Id.* § 226(f).

187.   On August 29, 2019, Plaintiff Taylor, through her representative counsel, made a written request for her personnel files and records relating to her performance or to any grievance pursuant to Labor Code § 1198.5, any instrument signed by Ms.

1  Taylor relating to obtaining or holding employment pursuant to Labor Code §432, and
2  her payroll records pursuant to Labor Code § 226. Defendants failed to respond or
3  otherwise comply with the statutory requirements to make this information available to
4  Plaintiff within 30 days of receiving the written request.

5    188.   Accordingly, Plaintiff is entitled to recover $750 for Defendants' failure to
6  make her personnel records available, and an additional $750 for Defendants' failure
7  to make her payroll records available. Plaintiff is also entitled to recover her
8  reasonable attorneys' fees and costs pursuant to Labor Code § 1198.5(l).

9                                **PRAYER FOR RELIEF**

10    WHEREFORE, Plaintiff prays for relief as follows:

11    a)    For an order certifying that the First and Second Causes of Action in this
12  Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b)
13  and that prompt notice of this action be issued to potential members of the
14  Collective, apprising them of the pendency of this action, and permitting them to
15  assert their FLSA claims;

16    b)    For an order equitably tolling the statute of limitations for the potential
17  members of the Collective;

18    c)    Damages and restitution according to proof at trial for all unpaid wages
19  and other injuries, as provided by the FLSA, California Labor Code, and California
20  Business and Professions Code;

21    d)    For a declaratory judgment that Defendant has violated the FLSA,
22  California Labor Code, and public policy as alleged herein;

23    e)    For a declaratory judgment that Defendant has violated California
24  Business and Professions Code §§ 17200 *et seq.*, as a result of the aforementioned
25  violations of the California Labor Code and of California public policy protecting
26  wages;

27    f)    For preliminary, permanent, and mandatory injunctive relief prohibiting
28  Defendant, its officers, agents, and all those acting in concert with them from

committing in the future those violations of law herein alleged;

g)      For an equitable accounting to identify, locate, and restore to all current and former employees the wages they are due, with interest thereon;

h)      For an order awarding Plaintiff and the Class members compensatory damages, including lost wages, earnings, liquidated damages, and other employee benefits, restitution, recovery of all money, actual damages, and all other sums of money owed to Plaintiff and Class members, together with interest on these amounts, according to proof;

i)      For an order awarding Plaintiff and Class members civil penalties pursuant to the California Labor Code, and the laws of the State of California, with interest thereon;

j)      For an order awarding Plaintiff civil penalties pursuant to California Labor Code §§ 226, 432 and 1198.5;

k)      For an award of reasonable attorneys' fees as provided by the California Labor Code, California Code of Civil Procedure § 1021.5, California Labor Code § 1198.5, the laws of the State of California, the FLSA, and/or other applicable law;

l)      For all costs of suit;

m)      For such other and further relief as this Court deems just and proper.


Dated: January 29, 2020                    Respectfully submitted,


*/s/ Carolyn H. Cottrell*
Carolyn H. Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Michelle S. Lim (SBN 315691)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100; Fax: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
mlim@schneiderwallace.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William M. Hogg (to be admitted *pro hac vice*)
Texas Bar No. 24087733
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
3700 Buffalo Speedway, Suite 960
Houston, Texas 77098
Tel: (713) 338-2560; Fax: (415) 421-7105
whogg@schneiderwallace.com

*Attorneys for Plaintiff, Class, and Collective Members*

COLLECTIVE AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Jennifer Janet Taylor, et al. v. Eclipse Senior Living, Inc., et al.*

1

**DEMAND FOR JURY TRIAL**

2       Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff

3 is entitled to a jury.

4

5 Dated: January 29, 2020         Respectfully submitted,

6

7         */s/ Carolyn H. Cottrell*
Carolyn H. Cottrell (SBN 166977)
Ori Edelstin (SBN 268145)

8 Michelle S. Lim (SBN 315691)
SCHNEIDER WALLACE

9 COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400

10 Emeryville, California 94608
Tel: (415) 421-7100; Fax: (415) 421-7105

11 ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com

12 mlim@schneiderwallace.com

13 William M. Hogg (to be admitted *pro hac vice*)
Texas Bar No. 24087733

14 SCHNEIDER WALLACE
COTTRELL KONECKY LLP

15 3700 Buffalo Speedway, Suite 960
Houston, Texas 77098

16 Tel: (713) 338-2560; Fax: (415) 421-7105
whogg@schneiderwallace.com

17

18 *Attorneys for Plaintiff, Class, and Collective Members*

19

20

21

22

23

24

25

26

27

28