UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER JANET TAYLOR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ECLIPSE SENIOR LIVING, INC.; ECLIPSE PORTFOLIO OPERATIONS LLC; and EC OPCO CA PARTNER V LLC,<br><br>Defendants. | Case No.:  20cv190-LAB (WVG)<br><br>**AMENDED ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND REQUEST TO STAY PROCEEDINGS [Dkt. 49]** |

In response to a putative class action filed by Plaintiff Jennifer Taylor and the subsequent amendment to her complaint, Defendants Eclipse Senior Living, Inc. and Eclipse Portfolio Operations, LLC (collectively, "Eclipse"), as well as Defendant EC Opco CA Partner V, LLC, filed a renewed motion to compel Taylor to arbitrate her claims on an individual basis per the binding arbitration agreement to which she allegedly is subject. (Dkt. 49).

Taylor opposes the motion, arguing against the validity and enforcement of the agreement's arbitration provision. (Dkt. 52). For the following reasons, the Court **GRANTS** Defendants' motion and stays all further proceedings pending

arbitration of the matter.

## I. BACKGROUND

In February 2019, Defendants hired Taylor as a nurse at their senior living facility located in La Mesa, California. (Dkt. 49-1 ¶ 14). Upon hiring, Taylor was provided with an employee handbook, which included in part a meal period policy, overtime protocol, and a six-paragraph Associate Acknowledgement and Agreement ("Agreement"). The Agreement between Taylor and "the Company" (defined as "Elmcroft Senior Living") was signed by Taylor on February 11, 2019. The Agreement specifically states the following:

> I and the Company agree to utilize binding individual arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to my employment, including but not limited to the termination of my employment and my compensation, unless I have opted out of arbitration below. Otherwise, I and the Company each specifically waive and relinquish our respective rights to bring a claim against the other in a court of law, and both I and the Company agree that any claim, dispute, and/or controversy that I may have against the Company (or its owners, directors, officers, managers, associates, or agents), or the Company may have against me, shall be submitted to an determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA")
>
> . . .
>
> By signing this agreement, I am agreeing to waive any substantive or procedural rights that I may have to bring an action on a class or collective basis.
>
> . . .
>
> Due to the nature of arbitration, the Company has provided me with the ability to choose to affirmatively opt out of paragraphs 2,3, and 4 of this Agreement . . . I understand that arbitration is voluntary, and neither my participation in arbitration nor me opting out of arbitration

> will otherwise affect my employment. Accordingly, I may elect to opt out of arbitration and retain any right I may have to bring an action in court . . .

(Dkt. 49-1, Ex. 2 ¶¶ 2–3, 5).

Taylor was employed at Eclipse until approximately September 2019 when she resigned. (Dkt. 46, First Amended Complaint ("FAC") ¶ 12). Taylor then brought this putative class action against Defendants, alleging that she had been denied compensation for time worked, including working through meal breaks and performing "off-the-clock" work. (FAC ¶ 66). She asserts ten causes of action under the Fair Labor Standards Act, California Labor Code, and California Business and Professions Code.

## II.   DISCUSSION

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, governs the enforcement of arbitration agreements involving interstate commerce. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232-233 (2013). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate "streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). "The FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration has been signed.'" *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

In determining whether to compel arbitration, a court must determine: "'(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 955–56 (9th Cir. 2012), *on reh'g en banc*, 718 F.3d 1052 (9th Cir. 2013) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207

F.3d 1126, 1130 (9th Cir. 2000)). If both requirements are satisfied, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id*. The burden of proving that the claims at issue are not suitable for arbitration is on the party resisting arbitration. *Green Tree Fin. Corp-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Here, Defendants argue that Taylor is subject to a binding arbitration provision contained in the Agreement she signed when she was first hired as a nurse at Grossmont Gardens. (Dkt. 49 at 1). They claim that the Agreement is valid and enforceable under the FAA and California law, and as such, Taylor must submit any claims arising out of her employment for resolution by mandatory binding arbitration on an individual basis. (*Id*.).

In response, Taylor first argues that she received the Agreement (contained in the Employee Handbook) and the accompanying Attestation Page separately, and that because the latter page allegedly did not reference any arbitration agreement, she did not consent to—and should not be bound by—the relevant arbitration provisions currently at issue. (Dkt. 52 at 7–10). She does not dispute that prior to receiving and signing the Attestation Page, she was provided with a copy of the Associate Handbook, which includes the relevant arbitration provisions, and she declines to acknowledge that the Attestation Page she signed clearly states, "DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE ACKNOWLEDGEMENT AND AGREEMENT." (*See* Dkt. 49-1, Ex. 2 at 4). She appears to suggest instead that this language referred to a HIPAA agreement or other drug and alcohol policy documents she received along with the documents in question, not the arbitration Agreement. But this argument is unpersuasive, particularly where the Attestation Page does not even reference any HIPAA or drug and alcohol policies. Her failure to read or understand the terms to which she agreed is "legally irrelevant" and does not invalidate her written assent to the contract. *See Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 383, 203 Cal.

Rptr. 3d 522, 530 (2016) (The fact that defendant either chose not to read or take the time to understand these provisions is legally irrelevant."); *Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667, 1674, 53 Cal. Rptr. 2d 515, 520 (1996) ("[P]laintiff was bound by the provisions of the arbitration agreement regardless of whether she read it or was aware of the arbitration clause when she signed the document.") (cleaned up). Moreover, even if the Attestation Page failed to put Taylor on notice, her offer letter specifically informed her that her "[e]mployment . . . is conditioned upon [her] agreement to submit employment-related disputes to binding arbitration." (Dkt 49-1, Ex. 1 at 2). That provision further states that by signing and accepting the employment offer, Taylor "agree[s] to the Company's standard Arbitration Agreement." (*Id.*). Taylor signed that offer letter on January 28, 2019. (*Id.*). Where, as here, an offer letter expressly conditions employment on an agreement to arbitrate, the employee's signature amounts to acceptance of the agreement. *See Cisneros Alvarez v. Altamed Health Serv. Corp.*, 60 Cal.App.5th 572, 584 (2021). Given the facts as alleged, Taylor cannot plausibly claim that she was not given sufficient notice of the arbitration terms.

Taylor next argues that, even where Defendants could show the existence of a valid arbitration agreement, the Agreement was only between Taylor and "Elmcroft Senior Living"[1] (otherwise defined as the "Company"), not Defendants, and Defendants are therefore precluded from enforcing the Agreement against her. (Dkt. 52 at 10). But this argument likewise fails. In this Court's prior Order, issued on March 15, 2021, the Court found that Eclipse had failed to file a fictitious name statement with the California Secretary of State, as required by California

---

[1] The Court acknowledges the distinction drawn between "Elmcroft Senior Living, Inc.," the former operator of Grossmont Gardens prior to Eclipse's January 2018 management take-over, and "Elmcroft Senior Living," the trade name continued to be used by Eclipse in relation to Grossmont Gardens.

law, and as such, Eclipse was temporarily precluded from enforcing the arbitration Agreement until it could bring itself into compliance with the law. (Dkt. 27 at 2–3). The Court also confirmed that noncompliance with the fictitious name requirement "doesn't invalidate a business's agreements," it merely "precludes enforcement of those agreements until the fictitious name is registered." (*Id*. at 3).

Defendants are now able to demonstrate that "Elmcroft Senior Living" and "Elmcroft by Eclipse Senior Living" have since been registered as fictitious names of Eclipse. (Dkt. 49-3 ¶¶ 2–3, Exs. 9 and 10). Despite Eclipse's present compliance, though, Taylor has renewed her previous argument that "Elmcroft Senior Living, Inc." is a separate company from Eclipse and Eclipse should not be able to enforce an Agreement signed by a separate entity. (Dkt. 52 at 12–13). But Taylor once again improperly conflates "Elmcroft Senior Living," Eclipse's trade name and signatory to the Agreement, with "Elmcroft Senior Living, *Inc.*," a separate entity who was not a signatory to the Agreement and who has no bearing on this discussion. As Defendants explain, "Elmcroft Senior Living" is merely the trade name used and owned by Eclipse, who, in January 2018, took over management of all senior living communities in the United States that were operated under the name, "Elmcroft Senior Living," including Grossmont Gardens. (Dkt. 49-1, Ex. 2 ¶¶ 8–9). As part of that take over in management, Eclipse obtained the sole legal right to use the "Elmcroft" and "Elmcroft Senior Living" trademarks and brand names, and Grossmont Gardens continued to use the Elmcroft branding even after the January 2018 transition. (*Id*.). Indeed, Taylor's employment offer specifically stated, "I am delighted to extend an offer of employment as Licensed Practical Nurse/Licensed Vocational Nurse . . . with Elmcroft by Eclipse Senior Living at Grossmont Gardens." (Dkt. 49-1, Ex. 1 at 1); *see Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 955, 135 Cal. Rptr. 2d 505, 513 (2003) ("Extrinsic evidence is admissible to prove a meaning to which the contract is

reasonably susceptible."). "California law . . . allows a nonsignatory to invoke arbitration under the doctrine of equitable estoppel even when a signatory 'attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants.'" *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870–71 (9th Cir. 2021) (quoting *Metalclad Corp. v. Ventana Env't Organizational P'ship*, 109 Cal. App. 4th 1705, 1 Cal. Rptr. 3d 328, 334 (2003)). Taylor cannot now escape the contract by suing non-signatories to the Agreement when the claims against the non-signatory Defendants are "intimately founded in and intertwined with" Taylor's Agreement with "Elmcroft Senior Living." *Franklin*, 998 F.3d at 871; *see also In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017) (quoting *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013)) ("[A] plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'").

Finally, Taylor claims that the arbitration provision is unconscionable and unenforceable. "In order to establish an unconscionability defense under California law, a party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *See Poublon v. CH Robinson Company*, 846 F.3d 1251, 1260 (9th Cir. 2017). Taylor asserts procedural unconscionability based on an adhesion contract theory. It is well settled, however, that unless one's employment is conditioned on the signing of an adhesion contract without negotiation, then the degree of procedural unconscionability is low. *See Id*. at 1262–63. Here, the arbitration provision clearly states that Taylor may opt out of the arbitration provision and that doing so will have no effect on her hiring. (Dkt. 49-1, Ex. 2 at 3 ("Due to the nature of arbitration, the Company has provided with the ability to

choose to affirmatively out of . . . this Agreement . . . I understand that arbitration is voluntary, and neither my participation in arbitration nor me opting out of arbitration will otherwise affect my employment.")). Taylor was not presented with a contract of adhesion and thus there can be no procedural unconscionability where Taylor was provided with the opportunity to opt out of the arbitration provision and she deliberately chose not to do so. *See Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (finding that the case "lacks the necessary element of procedure unconscionability" where the plaintiff was given the opportunity to opt-out of the arbitration provision by mailing in a one-page form).

As to the alleged substantive unconscionability of the Agreement, Taylor relies on language in the "Acknowledgment of Receipt of Associate Handbook," stating that "[t]he Company retains the right to change these policies and benefits at any time, without advance notice as it deems appropriate." (Dkt. 52 at 21; Dkt. 49-1 Ex. 3). First, it is not clear to the Court whether and how this provision extends to the arbitration Agreement currently at issue, as this language is contained in a separate acknowledgement relating to receipt of the Associate Handbook, and the arbitration Agreement itself contains specific provisions relating to any alterations of the Agreement. (Dkt. 49-1, Ex. 2 ¶¶ 6–7); *see Harris*, 248 Cal. App. 4th at 386 ("As is apparent, the modification condition contained in the arbitration agreement in Appendix A is the more specific provision concerning alteration of the parties' understandings. Thus, the more specific provision must be enforced."). Additionally, the California Supreme Court has held that "the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice." *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 4, 999 P.2d 71 (2000); *see Brown v. Superior Ct.*, 34 Cal. 2d 559, 564, 212 P.2d 878, 881 (1949) ("In every contract there is an implied covenant of good faith and fair dealing that

neither party will do anything which injures the right of the other to receive the benefits of the agreement."); *Beaver v. Tarsadia Hotels*, 978 F. Supp. 2d 1124, 1141 (S.D. Cal. 2013*), on reconsideration in part*, 29 F. Supp. 3d 1294 (S.D. Cal. 2014), *aff'd*, 816 F.3d 1170 (9th Cir. 2016) ("Therefore, an implied covenant of good faith and fair dealing is sufficient to avoid a finding that a promise is illusory."). Beyond a conclusory statement otherwise, Taylor fails to explain why this provision was illusory or why the implied covenant of good faith and fair dealing does not apply here. Accordingly, this argument also fails.

Because Taylor consented to the arbitration provisions and it's neither procedurally nor substantively unconscionable, the Agreement is valid and enforceable.

### III.  CONCLUSION

For these reasons, Defendant's motion to compel arbitration and stay the case pending arbitration is **GRANTED**.

**IT IS SO ORDERED**.

Dated:  April 1, 2022

Hon. Larry Alan Burns
United States District Judge